DARWIN D. BAXTER *vs.* SAMUEL McINTIRE.

Upon the trial of a writ of entry to foreclose a mortgage, the defendant cannot object to the introduction in evidence of a bond corresponding to that described in the condition of the mortgage, except in being for a less sum and dated one day later.

A voluntary loan fund association, established before the passage of the *St.* of 1854, *c.* 454, is lawful.

A mortgage made by a member of a voluntary loan fund association to its trustees, before the passage of the *St.* of 1854, *c.* 454, to secure the payment of interest at the rate of six per cent. a year on an advance by the association to him, and of his monthly dues and fines, is valid.

A member of an unincorporated loan fund association, who was also their secietary, made a bond and mortgage to the association in contemplation of a loan of a certain amount, part of which he received; but afterwards repaid that amount, on the suggestion of the association that they could not make so large a loan on the security offered; and executed a new bond for the lesser loan which they were willing to make, and cancelled the first bond. *Held,* that if the association never assented to or ratified the cancelling of the first bond, they might still maintain a writ of entry to foreclose the mortgage.

WRIT OF ENTRY to foreclose a mortgage of land in Lowell. Plea, the general issue, with a specification of defence that " no such bond as is named in the condition of the mortgage referred to " was ever executed by the defendant, or delivered to the mortgagee, or held by the plaintiff; that if any such bond was made, it was usurious and void, and also that it had been cancelled and satisfied; and that there was no such association existing at the time of the execution of said mortgage, as was named therein.

At the trial in the court of common pleas in Middlesex at September 1856, before *Mellen,* C. J., the plaintiff gave in evidence a mortgage of this land, dated April 24th 1854, made by the defendant to Joshua Merrill and others, trustees of the Merrimac Mutual Loan Fund Association, their successors and assigns, and assigned by said trustees to the plaintiff, the consideration named in which was $1,980, and the condition of which was this :

" Provided however, that if the said Samuel McIntire, or his executors, administrators or assigns, shall pay unto the said association, or to said trustees, or their successors or assigns the sum of thirty three $\frac{90}{100}$ dollars per month until the termination of said

association, and also all fines which may be charged to him agreeably to the articles of said association; and shall keep all other covenants, promises and agreements made with said association, according to a bond of this date, given by said McIntire to said trustees; and shall in the mean time keep the buildings standing on said premises insured against fire in a sum not less than twelve hundred dollars, for the benefit of said mortgagees, their successors and assigns ; and also pay all taxes levied or assessed upon said premises; and shall fully indemnify the said trustees, their successors and assigns, from all loss, costs and damage of every description by reason of the nonfulfilment of any of these conditions; then this deed, as also said obligation, shall be absolutely void to all intents and purposes."

The plaintiff produced a bond from the tenant to said Merrill and others, bearing date one day after the mortgage, and otherwise corresponding with the mortgage, except in being conditioned for the payment of $28.25, instead of $33.90, monthly, ( being the bond in suit in *Merrill* v. *McIntire, ante,* 157,) and proved its execution and assignment to himself, and that the monthly instalments secured thereby were unpaid, except an amount of $200 or upwards, claimed by the defendant as due h m from the association, when the bond was given ; and contended that this evidence made out his case.

But the defendant objected that the bond did not correspond in date and amount with that described in the mortgage ; that the bond was another and different transaction; and that without farther evidence the plaintiff could not recover. And the court so ruled.

The plaintiff then, in order to prove that said mortgage and bond were parts of the same transaction, and that they were so regarded by the parties, offered evidence tending to show that the " Merrimac Mutual Loan Fund Association" was a joint stock company in Lowell, of which the tenant was one of the original associates, bound together under certain articles of association, (a printed copy of which was put in evidence, and the important parts of which are copied in the margin, *ante,* 158 *&* *s-q.*) and which commenced business about three months before

the date of this mortgage, and had since become incorporated under the *St.* of 1854, *c.* 454; that the defendant was its first secretary, and on the 24th of April 1854, the day of the date of the mortgage, bid off, under the rules of the association, ten shares of the association, which, with the two shares he already held, would entitle him, under said rules, to receive a loan, secured by real estate, of $1,980, the sum mentioned in the mortgage; that the surveyor of the association reported to the board of directors that the property offered as security was only sufficient security for the sum of $1,650, the sum mentioned in said bond, and that it was approved by the directors as security for that sum only; that the defendant, in anticipation of a more favorable report of the surveyor, and of the property being accepted as security for the larger sum, had executed this mortgage; that, after some negotiation with the directors, the defendant agreed to receive the smaller sum, and executed said bond therefor; and sent this mortgage to be recorded on the 2d of May then next, and, after the same had lain the required time upon record to comply with their rules, received the money therefor, and charged himself therewith on the books of the association; that the whole transaction in loaning the money and making the security was done by the defendant, acting as well for himself as the association, with the exception of fixing the amount, and passing upon the sufficiency of tenant's title to the property offered as security; that it was contrary to the articles of the association to loan money, except to members and upon real estate security; that this bond was executed at the same time as the mortgage, and was the only bond or other personal security given by the defendant secured by this mortgage; that the defendant had said that this mortgage was given to secure this bond, and afterwards credited himself with payments on the books of the company as the proper monthly payments thus secured, and kept said bond and mortgage amongst the securities of the association as the only securities for said loan, until he resigned his office, and then delivered them, with the other securities, to his successor.

The court ruled that parol evidence could not be introduced

to change the express words of the bond or of the mortgage, or to reconcile their conflicting dates and amounts, or to show that this mortgage was given to secure the bond; and that the proof offered would not sustain this suit.

A verdict was returned for the defendant, and the plaintiff alleged exceptions, which were argued and decided at Boston in February 1857.

*B. F. Butler & N. St. J. Green*, for the plaintiff.

*T. Wentworth & R. B. Caverly*, for the defendant.

DEWEY, J. The question is as to the right of the plaintiff to maintain his action to foreclose a mortgage, and to have a conditional judgment entered thereon.

On the part of the defendant it is alleged that no such bond, either corresponding in date or amount as is set forth in the mortgage deed, is outstanding; and that the bond now produced in the penal sum of sixteen hundred and fifty dollars, under the date of April 25, 1854, is not secured by this mortgage.

If it be competent to introduce parol evidence to show the real nature of the transactions between the parties, and to explain this supposed variance, it might be shown that the bond now produced was the bond intended to be secured by the parties, and was substituted, in lieu of that described, by the mutual consent of the parties, as the bond taken on the actual delivery and acceptance of the mortgage deed.

But it is objected by the defendant that all parol evidence upon this subject must be excluded, and that we can only recur to the condition in the deed itself to ascertain what demands are secured by the mortgage.

To some extent certainly parol evidence may be properly resorted to, for the purpose of showing whether the demand exhibited was really the subject of the mortgage. Very considerable latitude has been allowed in admitting evidence to show that the securities offered at the trial were really substitutes for those described in the mortgage; and thus they have been held to be secured by the mortgage, though not corresponding with the liabilities described in the mortgage. The present question arises however under a somewhat different aspect, and

if the mortgage deed had only recited a bond for the sum of nineteen hundred and eighty dollars as the condition of the mortgage, it might have required more consideration whether that description could be applied to a bond for sixteen hundred and fifty. The case of *Hall* v. *Tufts*, 18 Pick. 455, would seem to furnish some authority for such evidence in that case.

But in the view we have taken of this case the condition of this mortgage is such, that it is quite as important for the defendant to avail himself of this parol evidence, as it is for the plaintiff. The plaintiff holds a mortgage deed, subject to be defeated if the defendant shall pay to the mortgagees, the trustees of the Mutual Loan Fund Association, " the sum of thirty three $\frac{90}{100}$ dollars per month until the termination of said association, and also all fines which may be charged to him agreeably to the articles of said association, and shall keep all other covenants, promises and agreements made with said association, according to a bond of this date," &c.

If we exclude all parol evidence, the mortgagor is bound to pay to the holder of the mortgage the sum of thirty three dollars and ninety cents per month, a sum larger than the plaintiff now claims, or than could be due to him, giving effect to the parol evidence. The only effect of the evidence being to show a smaller liability under the mortgage, and to explain why the plaintiff cannot produce a bond corresponding with the description of the bond in the mortgage, we think the defendant cannot object to its introduction.                    *Exceptions sustained.*

At the new trial in the court of common pleas at September term 1857, before *Morris*, J., the plaintiff's attorney read in evidence the mortgage and the assignment thereof to the plaintiff; and rested his case.

The defendant contended that the mortgage was never delivered, and that if it ever had been delivered it was of no validity, because the bond therein described had been cancelled. And the defendant testified that he was secretary of said association from January to June 1854 ; that when the mortgage was signed he gave a bond in the penal sum of $1,980, such as was

described in the mortgage; that the bond was retained in his office, where the business of the association was usually transacted, and he sent the mortgage to the registry to be recorded; that he signed these papers in consideration of the receipt of $1,000 out of the funds of the association, by the check of Merrill, who was president of the association as well as a trustee; that on the 25th of April 1854 Merrill, and Manahan, the surveyor of the association, requested him to give up the $1,000, saying that the association would not be satisfied in granting him so large a loan, and that it was understood that he bid off ten shares only; and that on the next day he paid back $800, and agreed to return the balance of $200, which he had used; that on the 6th of May 1854 he received from the association the amount of $1,650, less said $200, and executed a new bond in the penal sum of $1,650 to the trustees of the association, and then, or soon afterwards, destroyed the bond first named, as he thought he had the right to do.

It appeared by the books of the association that on the 2d of May 1854 the association voted, " that the finance committee attend to the papers of the secretary in regard to his loan, and that the money be advanced on shares purchased, when the papers are ready."

The articles of association were introduced in evidence. See *ante,* 158 *& seq., note.* It also appeared that in January 1854 the association became incorporated under the *St.* of 1854, *c.* 454; and that the assignment of the mortgage to the plaintiff was after that date.

Merrill was called as a witness for the plaintiff, and testified that there never was but one loan to the defendant by the association; that he never authorized or had anything to do with a loan of $1,650 upon the defendant's bond, but that on the defendant's representation that a vote had been passed that he should receive the loan of $1,980, he as president gave him a check for $1,000, by which he obtained that amount; that afterwards, being informed that there was some misunderstanding about it, he called on the defendant and requested him to pay back the money; which, after some hesitation, the defendant

15 *

agreed to do, and paid back $800 of it; that the witness never consented to the cancelling or discharge of the bond, nor did anything to or with the papers, and did not suppose they were completed, and could not say that he ever saw them; and that he had brought a suit on the bond of $1,650, dated April 24th 1854.

Manahan was also called as a witness, and testified that on the 31st of March 1854 he made, for the association, a survey of the land described in the mortgage, and reported it good to the amount of ten shares ($1,650), but did not report it good for twelve shares ($1,980); that he had nothing to do with the loan to McIntire, and had no authority to act in making a loan, and knew nothing about the papers at the time they were made.

It appeared by the books of the bank that the defendant received the $1,000 out of the funds of the association on the 22d of April 1854, and returned $800 thereof on the 26th of said April, and received $1,450 on the 6th of May 1854.

The plaintiff introduced evidence tending to show that the loan was made to the defendant, and the money finally received by him, upon the bond of $1,980, and not upon that of $1,650, and that the defendant was never authorized to cancel the bond of $1,980.

The defendant requested the court to instruct the jury as follows:

" 1st. That if the plaintiff brought this suit for the Merrimac Mutual Loan Fund Association for their benefit, and did not pay anything for the mortgage, said association should be regarded by them as the party plaintiffs in interest.

" 2d. That said association, under its by-laws, was an illegal organization, and that it was not competent for them to make such a contract as the mortgage in suit, in the name of trustees or otherwise, and that the mortgage, for this reason, could have no validity.

" 3d. That if there was no delivery of the mortgage in suit as a conveyance by the defendant to the association, they should, on this ground, find for the defendant.

"4th. That said mortgage is invalid, upon the ground that the provisions and conditions therein contained are against law.

" 5th. That if $1,000 was taken from the funds of the association on the 22d of April 1854, by the defendant, as a part of a contemplated loan to him, and as a part of the consideration for the deed of the 24th of that month, and if he afterwards, on the 26th of said April, was induced by the president of the association to pay back to the association $800, and the balance of $200 on the 6th of May, it was a payment of the mortgage, unless the parties had agreed that it should not be a payment.

" 6th. That if the money was paid back as appears by the records of the bank, the defendant had the right, in the absence of any agreement to the contrary, to cancel the bond corresponding with the mortgage ; and that if he did cancel said bond, the delivery of the money and the destruction of the bond were a payment of the mortgage, and rendered it void, if it ever had any validity."

The court gave the first and third instructions prayed for ; and refused the second and fourth prayers for instructions ; and as to the fifth and sixth, instructed the jury " that it was for them to decide whether the loan was in fact made to the defendant, and the money finally received by him, upon the bond of $1,980, or upon that of $1,650; that if made and received upon the former, and that bond had been legally and rightfully discharged, this action could not be maintained; that the cancellation of said bond by the defendant would be ineffectual, unless previously authorized by the association or by the trustees, or subsequently ratified by them ; " and left it to the jury to determine upon the whole evidence, whether either the association or the trustees had previously authorized such cancellation or subsequently ratified it.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions, which were argued in Boston in February 1859.

*Caverly,* for the defendant, in support of the second and fourth prayers for instructions, cited *Farrar* v. *Barton,* 5 Mass. 395 ; *Wheeler* v. *Russell,* 17 Mass. 258 ; *Carleton* v. *Whitcher,* 5 N. H. 196 ; *Hinds* v. *Chamberlin,* 6 N. H. 225.

*Butler & W. P. Webster,* for the plaintiff

MERRICK, J. Under proper instructions from the court the jury have found that the loan to the defendant was made upon his bond for $1,980, which is referred to and described in the mortgage; and that this bond was never discharged by the obligees, nor cancelled in conformity to any authority previously given or any assumed authority subsequently ratified by them or by any party in interest. And it has been determined by the court that if the bond for $1,650 was subsequently taken by the obligees as a substitute for the former bond for $1,980, the production and proof of it by the plaintiff is sufficient, if no other defence is shown, to enable him to maintain his action.

No reason, certainly no adequate reason, is shown for declaring that the mortgagees were incompetent to take the mortgage, or to make the contract for which it was received by them as collateral security. Voluntary associations, similar to that of which the mortgagees were the alleged trustees, have been recognized by the legislature as parties to be regarded with favor; and they have been expressly authorized to take to themselves the powers and privileges of bodies corporate, for the more convenient transaction of the business in which they are engaged. *St.* 1854, *c.* 454, § 5. *Merrill* v. *McIntire, ante,* 157.

As the instructions which were given to the jury were correct, and well adapted to the questions of fact which arose at the trial, the defendant has no just cause of exception to the proceedings, because the precise rulings asked for were not made. It is sufficient that the substance of them was fully embraced in the instructions actually given.

Nothing therefore remains but that conditional judgment for possession be rendered for the plaintiff. Upon failure of the defendant to pay, within the time prescribed by the statute, the sum still due, for which the mortgage stands as security, the plaintiff will be entitled to have his writ of possession. The sum which is actually due is of course to be ascertained in a proper manner, before the conditional judgment is entered.